**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| GRETCHEN ALEXANDER, *on behalf of herself and all others similarly situated,* | ) ) ) | |
| Plaintiff, | ) ) | No. 2:14-mn-00001-DCN<br>No. 2:14-mn-00540-DCN |
| vs. | ) ) ) | **ORDER** |
| PELLA CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |
| _____ ) | | |

This matter is before the court on a motion to dismiss brought by defendant Pella

Corporation ("Pella"). For the reasons set forth below, the court grants Pella's motion

and dismisses all of plaintiff's causes of action.

## I.  BACKGROUND

Plaintiff Gretchen Alexander ("Alexander") built her home in 1988. Compl. ¶ 22.

In 1997, she purchased and installed Pella Architect Series windows in her home. Id.

The windows were covered by a ten-year limited warranty. Id. ¶ 25. In March 2002,

Alexander "began experiencing leaking for two of her windows due to failure of the

cladding on the sashes." Id. ¶ 22. Alexander contacted Pella and Pella provided

replacement windows which were also Architect Series windows. Id. Alexander

subsequently had windows replaced due to failure and rotting of the sashes in February

2005, January 2007, January 2008, February 2008, February 2011, July 2011, December

2011, August 2012, February 2013, May 2013, and June 2013. Id. All the replacement

windows were Architect Series windows, and the windows that failed in 2012 and 2013

were themselves replacement windows. Id. Alexander claims that Pella did not cover the

1

labor for any of the replacement windows and did not cover any of the costs of replacement of windows in June 2013. Id. ¶ 23.

Alexander alleges that the windows suffer from various design deficiencies, including "a defect in the design of the sill extrusion and sill nailing fin attachment as well as a defect in the design of allowing a gap between the jamb gasket and the sill gasket." Id. ¶ 36. According to Alexander, these defects cause leaks and allow water to be "trapped between the aluminum and the operable wood frame causing damage to the Windows and other property within the home." Id. Alexander alleges that Pella was or should have been aware that its windows were defective and that Pella concealed its knowledge of repeated product defects. Id. ¶¶ 42, 46.

On January 7, 2014, Alexander filed a class action complaint against Pella in the United States District Court for the Western District of Washington, alleging jurisdiction based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The complaint brings the following eight causes of action: (1) violation of the Washington Consumer Protection Act ("WCPA"); (2) negligence; (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5) fraudulent concealment; (6) unjust enrichment; (7) violation of the Magnuson-Moss Warranty Act ("MMWA"); and (8) declaratory relief.

On February 27, 2014, the United States Panel on Multidistrict Litigation transferred the case to this court as part of the consolidated multidistrict litigation. Pella filed the instant motion to dismiss on May 9, 2014. Alexander opposed the motion on May 30, 2014, and Pella replied on June 20, 2014. Pella's motion to dismiss has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### B.    Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law.  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 416 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  "In multidistrict litigation, the law of the transferee

circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit).  Therefore, this court must apply Washington substantive law and Fourth Circuit procedural law.

### III.  DISCUSSION

Pella asserts that all of Alexander's claims should be dismissed.  The court will first determine whether the applicable statutes of limitations are tolled by equitable tolling or class action tolling.  The court will then consider Pella's arguments about each claim individually.

### A.    Tolling

Pella argues that all of Alexander's claims are barred by their respective statutes of limitations.  While the specific statute of limitations for each claim will be discussed below, the parties argue about the application of two tolling doctrines to all of the statutes of limitations:  equitable tolling/fraudulent concealment and class action tolling.  The court considers these doctrines in turn.

### 1.    Equitable Tolling/Fraudulent Concealment

Alexander first argues that Pella is estopped from relying on any statute of limitations defense because it fraudulently concealed that its windows were defective. Compl. ¶ 61; Pl.'s Resp. 9.

4

Equitable tolling "permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed." In re Carlstad, 80 P.3d 587, 591 (Wash. 2003) (citing State v. Duvall, 940 P.2d 671 (Wash. Ct. App. 1997)). "Equitable tolling is generally used only sparingly, when the plaintiff exercises diligence and there is evidence of bad faith, deception, or false assurances by the defendant." Id. Additionally, "[f]raudulent concealment cannot exist if a plaintiff has knowledge of the evidence of an alleged defect." Giraud v. Quincy Farm & Chem., 6 P.3d 104, 111 (Wash. Ct. App. 2000) (citing Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 918–19 (Minn. 1990)). In other words, to toll the statute of limitations based on fraudulent concealment, plaintiffs "must do more than merely establish that [the defendant] concealed [the] information. . . . They must also show that they were personally unaware of this information." Id.

Pella argues that by failing to allege when and how she discovered Pella's alleged fraud, Alexander has failed to meet her burden of sufficiently pleading that the doctrine of fraudulent concealment saves her otherwise time-barred claims. See Summerhill v. Terminix, Inc., 637 F.3d 877, 881 (8th Cir. 2011) ("By failing to allege when and how she discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."); Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp., 546 F.2d 570, 574 (4th Cir. 1976) ("A complaint, (to avoid the statute of limitations,) must state . . . distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have

been before made." (citation omitted)); <u>Bergen v. Rothschild</u>, 648 F. Supp. 582, 587 (D.D.C. 1986) ("In general, courts read Rule 9(b) as requiring the fraudulent concealment plaintiff to plead with as much particularity as possible . . . the dates and circumstances of the eventual discovery of the underlying fraud."); <u>Stewart Coach Indus., Inc. v. Moore</u>, 512 F. Supp. 879, 886 (S.D. Ohio 1981) (holding that a plaintiff relying on the "discovery rule" must "affirmatively and particularly plead the date of discovery . . . or face dismissal of the complaint"); 51 Am. Jur. 2d <u>Limitation of Actions</u> § 163 ("One may not avoid the effect of the statute of limitations on the ground of fraudulent concealment if he or she fails to plead or offer evidence as to when he or she discovered the alleged fraud.").

Nowhere in Alexander's complaint or response does she allege when she actually discovered the alleged fraudulent concealment. Thus, the court has no indication when any tolling of the statute of limitations should have ended. Therefore, Alexander is not entitled to rely on fraudulent concealment to toll the statutes of limitations.

Moreover, even if fraudulent concealment were to apply, Alexander bases her fraudulent concealment argument on Pella allegedly concealing the fact that the windows are defective. Compl. ¶ 61. Alexander should have been on notice that the windows were defective by March 2002, when her windows began to leak "due to the failure of the cladding on the sashes." <u>Id.</u> ¶ 22. Therefore, any equitable tolling would cease by March 2002, when Alexander became aware of the fact that the windows were potentially

defective.[1]  As discussed below, even if the statutes of limitations were tolled pursuant to fraudulent concealment until early 2002, Alexander's claims would still be time-barred.

### 2. Class Action Tolling

Alexander also contends that the filing of a previous class action in federal court in the Northern District of Illinois, Saltzman v. Pella, tolled the statutes of limitation for her claims.  Pl.'s Resp. 13.

The doctrine of class action tolling was first announced in American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974).  In American Pipe, the Supreme Court held that an applicable statute of limitations is tolled during the pendency of a class action for putative class members who intervene after the denial of class certification—at least where certification is denied for failure to meet the numerosity requirement of Federal Rule of Civil Procedure 23.  Id. at 552–53; see also id. at 554 ([T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").  The Supreme Court has extended the American Pipe rule to purported members of the class who later file individual suits rather than intervene.  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983).

American Pipe tolling, however, applies only to a "subsequently filed federal question action . . . during the pendency of a federal class action."  Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999) (citing American Pipe, 414 U.S. 552–53) (emphasis added); see also Vincent v. Money Store, 915 F. Supp. 2d 553, 560–61

---

[1] This date could even be pushed forward to February 2008—when Alexander had windows in her home replaced for the fifth time due to failure and rotting sashes, Compl. ¶ 22—without changing the statute of limitations analysis.

(S.D.N.Y. 2013) ("The American Pipe case concerned the tolling of claims under a federal statute, the Sherman Act. It did not purport to announce a rule that would apply to state law claims. . . . The plaintiffs cannot rely on American Pipe to toll the statutes of limitations for their state law claims. The plaintiffs must look to any state analogue to American Pipe tolling rather than American Pipe itself."). Therefore, the court must determine whether Washington law would toll the statutes of limitations during the pendency of the Saltzman federal class action.

This case deals with what has been termed "cross-jurisdictional" class action tolling—that is, tolling during the pendency of a class action in another court, in this case a federal court in Illinois. See Wade, 182 F.3d at 287 (defining cross-jurisdictional class action tolling). Alexander concedes that Washington has "not yet adopted cross-jurisdictional tolling under American Pipe." Pl.'s Resp. 15. The Fourth Circuit has been reluctant to read cross-jurisdictional tolling into state law where it is otherwise silent. Wade, 182 F.3d 281, 287 (4th Cir. 1999) (applying Virginia law); see also Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to import a cross-jurisdictional tolling rule into California law, which otherwise does not have such a rule, and finding that "[t]he rule of American Pipe— which allows tolling within the federal court system in federal question class actions— does not mandate cross-jurisdictional tolling as a matter of state procedure"); Soward, 814 F. Supp. 2d at 281 (holding that New York would not apply cross-jurisdictional tolling and noting that the "few states that have considered the issue have been split in both their acceptance of cross-jurisdictional tolling and the rationale for their decision").

In short, Washington has not adopted cross-jurisdictional class action tolling and the court declines to establish such a rule in the first instance.  See <u>St. Paul Fire & Marine Ins. Co. v. Jacobson</u>, 48 F.3d 778, 783 (4th Cir. 1995) ("[T]he federal courts in diversity cases, whose function it is to ascertain and apply the law of a State as it exists, should not create or expand that State's public policy.").  Therefore, the statutes of limitations for Alexander's claims are not tolled by class action tolling.

### B.    Counts I, II, & VI—Violation of the WCPA, Negligence, and Unjust Enrichment

Pella contends that Alexander's claims for violation of the WCPA, negligence, and unjust enrichment are barred by the relevant statute of limitations.  Def.'s Mot. 5–7, 11.

Under Washington law, claims for violation of the WCPA, negligence, and unjust enrichment are all subject to a three- or four-year statute of limitations.  See Wash. Rev. Code § 19.86.120 (WCPA subject to four-year statute of limitations); Wash. Rev. Code § 4.16.080 (negligence claim subject to three-year statute of limitations); <u>Davenport v. Wash. Educ. Ass'n</u>, 197 P.3d 686, 704 (Wash. Ct. App. 2008) (unjust enrichment claim subject to three-year statute of limitations).

Statutes of limitation do not begin to run until a cause of action has accrued. <u>Gazija v. Nicholas Jerns Co.</u>, 543 P.2d 338, 341 (Wash. 1975).  In most circumstances, a cause of action accrues when its holder has the right to apply to a court for relief.  <u>Id.</u> However, when "some harm is sustained, but the plaintiff is unaware of it," the statute of limitations begins running as soon as "the plaintiff has in fact discovered that he has suffered injury or by the exercise of reasonable diligence should have discovered it."  <u>Id.</u> at 341–42.  Under this "discovery rule," "a cause of action does not accrue until a party

knew or should have known the essential elements of the cause of action." Green v. A.P.C. (Am. Pharm. Co.), 960 P.2d 912, 915 (Wash. 1998). The discovery rule does not require a plaintiff to understand all the legal consequences of the claim. Id. Rather, when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. Id. at 916. "[O]ne who has notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable inquiry would disclose." Id. (citations omitted). "The plaintiff need not be aware of the full extent of the damages; knowledge of some actual, appreciable damage is sufficient to begin the running of the statute of limitations." Hudson v. Condon, 6 P.3d 615, 620 (Wash. Ct. App. 2000).

Pella argues that by Alexander's own admission, she discovered the alleged defect in her windows in March 2002, when she allegedly began experiencing leaking from two of her windows "due to failure of the cladding on the sashes." Def.'s Mot. 6 (citing Compl. ¶ 22). Therefore, Pella asserts that Alexander knew the salient facts underlying her claim by at least March 2002 and that her WCPA, negligence, and unjust enrichment claims have been time-barred since at least March 2006. Id.

Alexander relies on North Coast Air Servs., Ltd. v. Grumman Corp., 759 P.2d 405 (Wash. 1988), for the proposition that in cases involving product defects, "an action does not accrue until a claimant knew of the harm and the apparent and immediate cause of the harm." Pl.'s Resp. 7. In North Coast, a federal district court certified the following question to the Washington Supreme Court: whether the Washington Product Liability Act's ("WPLA") statute of limitations

> begins to run as soon as an injury occurs in which a product is involved, or is it a question of fact to determine when 'in the exercise of due diligence'

the product's relationship to the injury should have been discovered, with the statute of limitations running from that date.

759 P.2d at 405.

The Washington Supreme Court first noted that "[i]t would appear that the statute does not begin to run upon mere discovery that a 'product' caused an injury; the discovery provision would be triggered upon discovery that a 'defective product' caused the injury." Id. at 410 (citation omitted).  The court went on to hold that on the record before it, there were "no facts which causally connected the product to the harm."  Id. at 411.  The court determined that "[p]laintiffs had no more reason to believe that there was any defect in the [product] than to believe or disbelieve [alternate explanations]" and that whether the plaintiff should have discovered the cause of the harm was an "unresolved question of fact."  Id.

The Washington Supreme Court's decision in North Coast interpreted the WPLA—and language specific to that statute—to determine when a claim accrued under that statute.  Specifically, the WPLA's statute of limiations provides that "no claim [for products liability] may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause."  Wash. Rev. Code § 7.72.060(3) (emphasis added).  Alexander has not pled a WPLA claim.

Nevertheless, Alexander argues that the Washington Court of Appeals extended North Coast to the WCPA in Mayer v. Sto Indus., Inc., 98 P.3d 116 (Wash. Ct. App. 2004).[2]  In Mayer, the plaintiffs sued a manufacturer over siding used when their home was remodeled.  Id. at 119.  In 1990, the plaintiffs noticed rust spots appearing below the

---

[2] Alexander does not argue that the reasoning of North Coast has been extended to negligence or unjust enrichment claims.

windows and penetrating into the siding's finish.  Id.  The company from which the

plaintiffs had purchased their windows thought the problem was water penetrating

through unsealed joints in the windows and attempted to repair the damage.  Id.  In 1994,

however, the plaintiffs discovered dry rot in the wood trim of the windows and the

substructure of the exterior walls.  Id.  When the plaintiffs sued in 1995, the defendant

argued that the suit was barred by both the WCPA's and WPLA's statute of limitations.

Id. at 124.

The court first analyzed the WPLA's statute of limitations under North Coast,

finding that the plaintiffs' claim was not time-barred because they had no reason to

believe that the defendant's siding was the reason for their damage until after they

discovered wood rot.  Id. at 124–25.  The court then briefly stated that "[f]or the reasons

stated above, [the defendant's] CPA argument also fails as the [plaintiffs] brought their

claim in sufficient time."  Id. at 125.

As an initial matter, it is far from clear that Mayer extended North Coast to

WCPA claims.  To the extent it did, the Washington Court of Appeals was anything but

explicit.  Moreover, the Washington Court of Appeals has recently cited Mayer for the

proposition that "[t]he discovery rule can apply to CPA claims."  Alexander v. Sanford,

325 P.3d 341, 360 (Wash. Ct. App. 2014); see also Cruson v. A.A.A.A., Inc., 140 Wash.

App. 1012 (2007) (unpublished) ("Since the discovery rule merely changes the date of

accrual from the moment of the violation to when the plaintiff knows of the facts

underlying the cause of action, the discovery rule is not inconsistent with the statute of

limitations within the CPA.  In fact, the discovery rule has been applied to the CPA.").

Additionally, district courts analyzing claims under the WCPA have held that such claims

are subject to the discovery rule.  See, e.g., Floral v. Wald Imports, Ltd., 2012 WL 424491, *6 (W.D. Wash. Feb. 9, 2012); Blough v. Shea Homes, Inc., 2013 WL 6276450, *6 (W.D. Wash. Dec. 4, 2013).  Therefore, Alexander's negligence, WCPA, and unjust enrichment claims are subject to the discovery rule.

It is still necessary to determine when Alexander was put on notice of the harm. Alexander argues that she did not know that the leaking was causing wider damage or that there was any defect in the windows.  Pl.'s Resp. 9.  However, "[t]he plaintiff need not be aware of the full extent of the damages; knowledge of some actual, appreciable damage is sufficient to begin the running of the statute of limitations."  Hudson, 6 P.3d at 620.

Here, Alexander pleads that "[i]n March 2002, Plaintiff began experiencing leaking from two of her Windows due to failure of the cladding on the sashes."  Compl. ¶ 22.  Alexander had windows "replaced due to failure and rotting on the sashes" five different times between March 2002 and February 2008.  Id.  By at least February 2008, Alexander had been "placed on notice by some appreciable harm."  Green, 960 P.2d at 916.  Even if the court were to apply North Coast, Alexander clearly pleads facts which "causally connect[] the product to the harm."  759 P.2d at 411.  To let Alexander claim that she had no reason to believe that the windows were the cause of the damage until "far later," Pl.'s Resp. 8, would be tantamount to allowing her to bury her head in the sand.  See Padilla v. Merch. Inventives, Inc., 126 Wash. App. 1050 (2005) ("Discovery rules require a claimant to use due diligence in discovering the basis for the cause of action.").

Because Alexander was on notice of a potential cause of action by at least February 2008, her WCPA, negligence, and unjust enrichment claims are time-barred.

### C.    Counts III, IV & VII—Breach of Express Warranty, Breach of the Implied Warranty of Merchantability, and Violation of the MMWA

Pella next argues that Alexander's breach of warranty claims are barred by the statute of limitations.  Def.'s Mot. 7–10, 11.

Under Washington law, breach of warranty claims are subject to a four-year statute of limitations.[3]  Wash. Rev. Code § 62A.2-725(1).  The statute of limitations accrues upon delivery unless the warranty "explicitly extends to the future performance of the goods," in which case the statute of limitations "accrues when the breach is or should have been discovered."  Id. § 62A.2-725(2).  Because the windows were delivered in 1997, Alexander's warranty claims are barred unless the warranties extend to future performance.

As an initial matter, "implied warranties, by their very nature, never 'explicitly extend to future performance.'"  Holbrook, Inc. v. Link-Belt Constr. Equip. Co., 12 P.3d 638, 641 n.5 (Wash. Ct. App. 2000) (citing W. Recreational Vehicles v. Swift Adhesives, 23 F.3d 1547, 1550 (9th Cir. 1994) (applying Washington law)).  Therefore, Alexander's claim for breach of the implied warranty of merchantability is time-barred.

The only remaining issue is whether Pella's express warranties explicitly extended to future performance.  "The 'overwhelming majority' of courts have interpreted future performance exceptions . . . very strictly," and "to come within the

---

[3] The MMWA does not contain a statute of limitations, so courts have held such claims are governed by the same limitations period that applies to the underlying state law breach of warranty claims.  See Rooney v. Sierra Pac. Windows, 566 F. App'x 573, 576 (9th Cir. 2014); Highway Sales, Inc. v. Blue Bird Corp., 559 F.3d 782, 789 (8th Cir. 2009).

future performance exception, a warranty must <u>explicitly promise or guarantee future performance of the goods</u>; it must be clear, unambiguous and unequivocal." <u>Holbrook</u>, 12 P.3d at 642 (quoting <u>Crouch v. Gen. Elec. Co.</u>, 699 F. Supp. 585, 593 (S.D. Miss. 1988)) (emphasis in <u>Holbrook</u>).

Alexander alleges two separate breaches of express warranties.  First, she alleges that Pella breached various warranties by shipping defective windows not appropriate for their intended use.  <u>See</u> Compl. ¶¶ 104, 111.  Alexander also alleges that Pella has failed to sufficiently repair or replace the defective windows according to the terms of the limited warranty.  <u>See</u> <u>id.</u> ¶ 108.

The court will first consider alleged breaches of warranty which relate to the quality of the windows.  Pella's limited warranty states:

> If Pella is given notice of a defect in materials or workmanship occurring within ten (10) years from the date of sale by Pella or its authorized dealer, Pella shall, at its sole option:  1) repair or replace the defective part(s) or product(s) (with cost of labor included only within two years of the date of sale by Pella or its authorized dealer) or 2) refund the original purchase price.

Compl. ¶ 39; Def.'s Mot. Ex. 1.

"Underlying [a] warranty to make needed repairs is the assumption that the goods may fall into disrepair or otherwise malfunction." <u>Holbrook</u>, 12 P.3d at 643.  "No warranty that the goods will not [fall into disrepair or otherwise malfunction], is to be inferred from the warranty to make needed repairs." <u>Id.</u>  In <u>Holbrook</u>, the Washington Court of Appeals cited two "repair or replace" warranties that did "not explicitly extend[] to future performance of the goods." <u>Id.</u> at 642–43.  The first warranty stated: "[Manufacturer] warrants . . . that it will repair or replace . . . any load cell supplied with a motor truck scale which . . . is defective in material or workmanship for a period of two

(2) years from the date of the original shipment." Id. at 643 n.7 (citing Neb. Popcorn, Inc. v. Wing, 602 N.W.2d 18, 21 (Neb. 1999)). The second warranty provided that "[i]f it appears within one year from the date of shipment . . . that the equipment . . . does not meet the warranties," the manufacturer will repair or replace defective parts. Id. (citing Centennial Ins. Co. v. Gen. Elec. Co., 253 N.W.2d 696, 697 (Mich. Ct. App. 1977)).

Here, the limited warranty is a "repair or replace" warranty similar to those in Nebraska Popcorn and Centennial Insurance and does not clearly, unambiguously, and unequivocally guarantee the future performance of the windows. Additionally, to the extent Alexander alleges that Pella provided express warranties through "various forms of media," including advertisements, promotional materials, owners' manuals, and product labeling, Compl. ¶¶ 24, 33, 34, the complaint contains no indication, and Alexander makes no argument, that these "warranties"—assuming they are warranties at all—explicitly extend to future performance. See Kittitas Reclamation Dist. v. Spider Staging Corp., 27 P.3d 645, 649 (Wash. Ct. App. 2001) ("A warranty of future performance must also expressly refer to a future time."). Therefore, the court dismisses Alexander's breach of express warranty and MMWA claims as time-barred to the extent they rely on warranties that the windows are free from defects.

Alexander also alleges that Pella has not "sufficiently repaired or replaced" the defective windows in her home. Compl. ¶ 108. Courts have held that a breach of express warranty claim must necessarily accrue before the warranty period expires. See Owen v. Gen. Motors Corp., 533 F.3d 913, 919 (8th Cir. 2008) ("The cause of action for breach of an express warranty begins to accrue upon discovery only if the defect is, or should have been, discovered within the warranty period; at the latest, the cause of action begins to

accrue on the date when the express warranty expires."); S. Jersey Gas Co. v. Mueller Co., 2010 WL 1742542, at *7 (D.N.J. Apr. 27, 2010) (holding that discovery of breach must necessarily occur during the warranted period).  The court agrees.  Any other reading of Wash. Rev. Code § 62A.2-725(2) would "effectively transform limited warranties for specific periods of time into unlimited warranties pursuant to which a seller's vulnerability to suit could potentially extend ad infinitum." S. Jersey Gas, 2010 WL 1742542, at *7.

Here, Alexander alleges that she purchased her windows in 1997.  Compl. ¶ 22. Therefore, the limited warranty which promised to repair or replace defective windows expired in 2007.  At some point in 2011, therefore, the limitations period for Alexander's breach of express warranty claim expired.  Because Alexander did not bring this claim alleging that Pella failed to sufficiently repair or replace her windows until 2014, it is time-barred.

Therefore, the court dismisses Alexander's breach of express warranty, breach of implied warranty of merchantability, and MMWA causes of action.

### D.    Count V—Fraudulent Concealment

Pella contends that Alexander's fraudulent concealment claim should be dismissed because it is time-barred.  Def.'s Mot. 10.

Washington law provides that a claim based on fraud must be commenced within three years, "the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."  Wash. Rev. Code § 4.16.080(4).  In other words, "[a] fraud action accrues when the aggrieved party actually discovers, or in the exercise of due diligence, could have discovered, the facts

17

constituting the fraud." <u>Busenius v. Horan</u>, 769 P.3d 869, 872 (Wash. Ct. App. 1989).

"The discovery contemplated is of evidential facts leading to a belief in the fraud and by

which the existence of the fraud may be established." <u>Id.</u> (citation omitted).  While

"mere suspicion of a wrong will not trigger accrual of the limitations period, . . . a 'clue

to the fact which, if followed up diligently, would lead to discovery, is in law equivalent

to discovery.'" <u>Debriae v. Attachmate Corp.</u>, 99 Wash. App. 1005 (2000) (quoting

<u>Hilton v. Mumaw</u>, 522 F.2d 588, 595 (9th Cir. 1975)).

　　　　Alexander alleges is that Pella fraudulently concealed the defective nature of the

windows.  Compl. ¶¶ 127–131.  However, as discussed in more detail above, when

Alexander began experiencing problems with her windows in March 2002, she had a clue

to the fact that the windows were defective.  Therefore, her fraudulent concealment claim

is barred by the statute of limitations.

### E. 　　Count VIII—Declaratory Relief

　　　　Finally, Pella argues that Alexander's claim for declaratory relief must be

dismissed because the Declaratory Judgment Act does not create an independent cause of

action.  Def.'s Mot. 29–30.

　　　　The Declaratory Judgment Act states that

> [i]n a case of actual controversy within its jurisdiction . . . any court of the
> United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201.  The Declaratory Judgment Act is procedural only, <u>Skelly Oil Co. v.</u>

<u>Phillips Petroleum Co.</u>, 339 U.S. 667, 671 (1950) (citing <u>Aetna Life Ins. Co. v. Haworth</u>,

300 U.S. 227, 240 (1937)), and "does not create an independent cause of action."

<u>Chevron Corp. v. Naranjo</u>, 667 F.3d 232, 244 (2d Cir. 2012).  Because the court

dismisses all of Alexander's other claims against Pella, it also dismisses his declaratory

judgment claim.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** Pella's motion and **DISMISSES**

**WITH PREJUDICE** all of Alexander's causes of action against Pella.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 21, 2014**
**Charleston, South Carolina**